UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 08-CR-20044 |
| ) | |
| CHRISTOPHER E. WEBSTER, ) | |
| ) | |
| Defendant. ) | |

## OPINION

Defendant, Christopher E. Webster, was indicted on one count of possession of 50 or more grams of cocaine base (crack) with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A) and one count of possession of 5 or more grams of crack with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B). On May 13, 2009, Defendant filed a Motion to Suppress Evidence and Quash Warrant (#18). Following a July 22, 2009 evidentiary hearing, Defendant filed his Findings of Fact and Conclusions of Law (#25) on October 9, 2009. The government filed its Findings of Fact and Conclusions of Law (#27) on October 30, 2009. For the following reasons, Defendant's Motion to Suppress Evidence and Quash Warrant (#18) is DENIED.

FACTS

Danville police officer Troy Wasson[1], in an application for a search warrant for the address of 1319 East English Street in Danville, Illinois, testified as to the following on August 14, 2008,

---

[1] Wasson is also a member of the Vermilion County Metropolitan Enforcement Group (VMEG), a law enforcement task force that investigates drug complaints in Vermilion County.

before Illinois state Fifth Circuit Associate Judge Joseph Skowronsk:

A week prior to applying for the warrant he received a telephone call at the VMEG office from an anonymous source indicating that a person named "Chris" was selling powder cocaine across from the Northeast Magnet School, a grade school in Danville. Wasson provided the caller with his name and telephone number and told them to call back if they had further information. He then began to investigate the caller's claim with other agents in the VMEG office. He learned that another agent, about three months earlier, had received information that a black male named Chris had been selling cocaine in the same neighborhood across from the grade school. Wasson also consulted with "Drug Track," an information gathering tool used by law enforcement at VMEG that assisted in drug investigations. He then ran a background check on Defendant, and obtained Defendant's photograph from the Secretary of State website and Defendant's criminal history. Wasson learned that Defendant had a history of drug arrests and weapons offenses.

Wasson was contacted again by the anonymous caller and they agreed to meet, at which meeting Wasson signed the caller up as a confidential informant (CI), who was working purely for compensation. Wasson admitted he had not used this informant before and had no track record as to her reliability. The CI provided Wasson with information on her relatives' dealings with Defendant involving drugs and the mention of weapons.

That day, August 14, 2008, Wasson arranged for the CI to make a controlled drug buy from Defendant. Under Wasson's observation, the CI placed a phone call to Defendant to arrange for the purchase of $100 of cocaine. Defendant and the CI arranged to meet at a gas station. At the same time, other police agents were conducting surveillance on the 1319 East English address and observed Defendant, with another black male, leave the house and go straight to the gas station

where the drug transaction was to happen on Bowman and Voorhees streets in Danville. Defendant then entered the CI's car. Constant surveillance was maintained by the police on Defendant and the CI during the entire transaction. After the transaction the CI met with Wasson and turned over to the police the drugs purchased from Defendant. The drugs field tested positive for cocaine. The CI and her vehicle were both searched before and after the transaction and no contraband was found.

About an hour prior to meeting with Judge Skowronski, Wasson had the CI place another phone call to Defendant to inquire about purchasing the same amount of cocaine. Defendant told the CI that he was out of town, but that the CI could meet him later that day at the 1319 East English address to purchase the drugs. Judge Skowronski issued the search warrant[2] for 1319 East English after questioning Wasson and hearing questions put to the officer by the State's Attorney.

Wasson then testified to the following at an evidentiary hearing held before this court on July 22, 2009:

Agents arrived at Defendant's home to execute the search warrant at around 6 p.m. on August 14, 2008. In the preparation for the warrant's execution, Wasson met with Master Sergeant Steve Guess and went over the relevant information, including Defendant's background and the fact that the criminal history had tagged Defendant as "armed and dangerous." Also, the CI had provided Wasson with information on her relatives' dealings with Defendant involving drugs and the mention of weapons. As Defendant pulled up in his vehicle to the driveway of 1319 East English, Wasson pulled in behind him, blocking Defendant's path. Wasson approached Defendant on the driver's side of Defendant's vehicle and informed him that they had a warrant to search his house. Defendant was

---

[2]The search warrant authorized the search of the residence at 1319 East English Street in Danville for drug records, drug paraphernalia, US currency, cocaine, and any other indicia or evidence of drug possession or delivery in violation of the law.

placed into handcuffs. After Defendant had been placed in handcuffs Wasson heard Guess ask if he would consent to a search of the vehicle. Although he did not hear Defendant's actual response, Wasson assumed it was a "yes" and that it was not possible Defendant did not give consent. Cocaine was found during the search of the vehicle. Drugs were also found in the residence.

Master Sergeant Steve Guess of the Illinois State Police testified that he was aware that Defendant had prior arrests for weapons offenses. Guess approached Defendant's car with Wasson at the initiation of the search warrant execution. Like Wasson, he was in uniform and clearly identifiable as a police officer. When Guess went to speak with Defendant, Defendant was already in handcuffs because the officers had a search warrant for the residence and Defendant had a prior history of weapons and had been tagged in police computers as being armed and dangerous. Guess asked Defendant if he could search Defendant's vehicle. Guess did not remember exactly verbatim what Defendant's reply was, but it was along the lines of "yeah, go ahead" or "I don't care." Guess remembered that Defendant had given him a positive answer in allowing him to search the vehicle. Defendant's car was then search and cocaine was recovered.

## ANALYSIS

Defendant argues that there is nothing in the record that provides probable cause for the issuance of a search warrant for the 1319 East English address and because the search warrant was invalid, Defendant's detention during the search was illegal, rendering invalid Defendant's consent to the police search of his vehicle.

### The Search Warrant's Validity

When a search is authorized by a warrant, great deference is given to the issuing judge's conclusion that probable cause has been established and his ruling is deferred to if there is

"substantial evidence" in the record that supports his decision. United States v. Sims, 551 F.3d 640, 643-44 (7th Cir. 2008). Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime. United States v. Peck, 317 F.3d 754, 756 (7th Cir. 2003). When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit. Peck, 317 F.3d at 755-56. Here, Defendant has challenged the CI's reliability and veracity, thus the court will consider the personal observations of the CI, the degree of detail given in the affidavit, independent police corroboration of the information, the interval of time between the events and the application for a warrant, and whether the informant testified at the probable cause hearing. Peck, 317 F.3d at 756. While none of these factors is determinative, a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability. Peck, 317 F.3d at 756.

In this case, more than just an affidavit was presented to Judge Skowronski. Wasson testified before the judge about the initial anonymous phone call, his follow up discussions and investigation into "Chris" with other officers, and the controlled drug buy. Wasson testified that Defendant left the 1319 East English residence, traveled directly to the gas station, and sold cocaine to the CI. Wasson informed that judge that a run of Defendant's driver's license listed 1319 East English as his home address. Wasson also told the judge that about an hour earlier they had made another call to Defendant to arrange a second controlled purchase and that Defendant had told them to meet him at the 1319 East English address, where the purchase would take place.

While it is true that Wasson had never used the CI before and that the CI did not testify before Judge Skowronski, this is outweighed by (1) the complaint filed in support of the search

warrant; (2) the independent police work done in tracking down Defendant's name, address, and criminal history; (3) the controlled buy; (4) the telephone call with Defendant where Defendant said he would complete the drug deal at the 1319 East English address; (5) the short amount of time between the events and the application for a warrant (the CI's initial call had been just a week prior to the warrant application and Defendant had, just one hour earlier, confirmed the completion of a drug transaction at the residence to be searched); and (6) Wasson's detailed testimony under oath before Judge Skowronski. Based on the totality of the facts and circumstances, the court concludes that there is substantial evidence in the record that Judge Skowronski had more than enough probable cause to issue a search warrant for the premises at 1319 East English Street to look for evidence of drugs and drug dealing.

Defendant cites to Peck for support for his argument that there was no probable cause to issue the search warrant, but that case is distinguishable from the present case. In Peck, the CI appeared before the judge, but she did not testify and only took an oath that the statements in her affidavit, which was short on details, were true. Peck, 317 F.3d at 756. Further the only follow up the police in Peck did to corroborate the CI's story was to run a simple background check on Peck to see if he had prior drug convictions. Peck, 317 F.3d at 757. In contrast, in this case, the CI provided the police with a location and name, "Chris," which the police, through independent investigatory work, were able to confirm. Wasson gave detailed testimony before Judge Skowronski about the police-initiated controlled buy which confirmed that Defendant was engaged in drug dealing. Wasson even went to the judge with information that Defendant wanted to complete a drug transaction at the address to be searched. The factual situation in this case is clearly distinguishable from that in Peck.

<u>Defendant's Detention and the Consent for Search of His Vehicle</u>

Under the Fourth Amendment a search and seizure must be reasonable, and the Supreme Court has held that this requirement authorizes officers executing a search warrant to take reasonable actions to secure the premises and ensure their own safety as well as the efficacy of the search. United States v. Jennings, 544 F.3d 815, 818 (7th Cir. 2008), citing Michigan v. Summers, 452 U.S. 692, 702-703 (1981).  Accordingly, officers executing a search warrant have categorical authority to detain any occupant of the subject premises during the search.  This authority exists in part because the probable cause underlying the warrant to search a premises gives police reason to suspect that its occupants are involved in criminal activity, and also because officers have a legitimate interest in minimizing the risk of violence that may erupt when an occupant realizes that a search is underway.  Jennings, 544 F.3d at 818.

Here, the officers had been told by the CI that Defendant had mentioned weapons in the past and the officers were aware of prior weapons arrests in Defendant's past.  They also knew that Defendant was involved in criminal activity, i.e. drug dealing.  Based on the earlier phone conversation with the CI, Defendant believed that he was returning home to complete a drug deal.  The search warrant was executed just as Defendant pulled into his driveway.  It was eminently reasonable for the officers to secure Defendant in handcuffs at the outset of their search so as to ensure their own safety and the efficacy of the search.  See Jennings, 544 F.3d at 818.

The Seventh Circuit has held that a request to search a vehicle or home is not likely to elicit an incriminating response and is therefore not interrogation, so that Miranda does not protect a defendant who is in custody from a police officer's request to search his vehicle. United States v. Bustamante, 493 F.3d 879, 892 (7th Cir. 2007).  Here, although the agents did not read Defendant his Miranda warnings, the agents merely asked for consent to search the vehicle.  As the Seventh

Circuit has held, it was not an interrogatory question. It was not likely to elicit an incriminating response. The officers did not ask if there were drugs in the vehicle or ask Defendant's assistance in locating drugs. They simply asked if they could search. Further, the court finds the testimony of Master Sergeant Guess credible that Defendant gave his affirmative consent to the officers to search the vehicle.

The court finds that there was probable cause for the issuance of the search warrant to search the residence at 1319 East English Street in Danville. The detention of Defendant was reasonable for officer safety and search efficacy pursuant to the execution of a lawful search warrant. Asking for consent to search Defendant's vehicle was not an interrogation that elicited an incriminating answer so as to require Miranda warnings. See Bustamante, 493 F.3d at 892; United States v McClellan, 165 F.3d 535, 545 (7th Cir. 1999). Defendant's Motion to Suppress Evidence and Quash Warrant (#18) is DENIED.

IT IS THEREFORE ORDERED:

(1) Defendant's Motion to Suppress Evidence and Quash Warrant (#18) is DENIED.

(2) This case remains set for a status conference on November 19, 2009, at 11:00 am before this court in Courtroom A.

ENTERED this 10th day of November, 2009

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE